# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DANIEL ODONGO,

    Plaintiff,

v.                                                      Case No: 6:18-cv-489-Orl-28LRH

WALGREENS CORPORATION,

    Defendant.

## ORDER

Plaintiff Daniel Odongo brought the instant action alleging two claims that Defendant Walgreens Corporation improperly terminated Odongo's employment based on his race in violation of 42 U.S.C. § 1981. Walgreens now moves for summary judgment. (Doc. 41).[1] As set forth below, Walgreens's motion is granted.

I. **Background**

Odongo was hired by Walgreens in 2013 as a pharmacy intern and became a licensed pharmacist later the same year. (Odongo Dep. at 34–35).[2] Odongo was promoted several times by people outside of his protected class before obtaining his final position as a registered store manager of a specialty pharmacy in 2016. (Id. at 36, 40, 41, 47, 59). As part of his store manager duties, Odongo was tasked with promoting and administering flu immunizations to patients and employees. (Id. at 97, 115). Walgreens sets internal goals for the number of immunizations administered to patients and

---

[1] Odongo filed a Response (Doc. 46) to the motion.
[2] Odongo's deposition, Healy's deposition, Vassa's deposition, and LaBelle's declaration are filed as exhibits to Walgreens's motion at Docs. 42–45. Citations are to deposition page numbers, not electronic record page numbers.

encourages flu immunizations for its employees. (Healy Dep. at 31–32, 51–52). Vipul Vassa, another Walgreens pharmacist, provided immunization training to Odongo and other Walgreens pharmacists. (Odongo Dep. at 182; Vassa Dep. at 20, 38).

Immunization orders are processed through Walgreens's electronic prescription processing program. (Odongo Dep. at 114). To protect patient privacy and comply with legal requirements, pharmacists may not access a patient's electronic prescription processing profile without consent. (Vassa Dep. at 25–26). Consent may occur in various ways, including written and verbal consent, as well as by submitting a prescription to Walgreens. (Healy Dep. at 74; Odongo Dep. at 104; Vassa Dep. at 24). If a patient submits a request for a prescription to be filled, Walgreens allows pharmacists to analyze the information in the electronic profile to determine whether the patient may also be a good candidate for a flu vaccine and whether the patient's insurance is likely to cover the immunization. (Healy Dep. at 76).

To provide quicker service to immunization patients, Odongo would go one step further and begin electronically processing the immunization order before the potential patient had agreed to be immunized. (Odongo Dep. at 105–109). Odongo would then back the order out of the electronic system if the patient declined to receive the immunization. (Id. at 109). Although Odongo states that Vassa trained him to do this, it is not in the printed training materials, and Odongo never personally saw Vassa or other pharmacists participate in this conduct. (Id. at 182–84, 205–06).

On or about October 3, 2016, Odongo entered an immunization order for a Walgreens employee who expressly declined receiving a flu vaccine. (Id. at 117–120; LaBelle Decl. at 1–2). Odongo reportedly followed the employee around the store with the

2

vaccine, attempting to vaccinate her. (LaBelle Decl. at 1–2). After receiving several rejections from the employee, Odongo relented; however, he forgot to back the order out of the electronic program until the following week. (Odongo Dep. at 131–32). The employee discovered the order and filed an anonymous complaint with Walgreens. (LaBelle Decl. at 1). After an internal investigation of the incident, Walgreens's corporate office recommended that Odongo be terminated. (Id. at 2–3). And that is what happened. The Director of Pharmacy and Retail Operations and the District Manager terminated Odongo's employment on December 20, 2016 for violating Walgreens's policies and the Health Insurance Portability and Accountability Act (HIPAA). (Id.).

After Odongo's termination, Primesha McGirt—an employee of the same protected racial class as Odongo—assumed Odongo's duties. (Odongo Dep. at 179). The position was then posted internally and Vassa—an employee outside of Odongo's protected racial class[3]—was chosen for the position. (Id. at 178). Shortly before Odongo's termination, Vassa had spent a few days shadowing Odongo and another specialty store manager at a different store. (Vassa Dep. at 46). It was Vassa's understanding that he was allowed to shadow the managers as part of his "individual development plan" and in order to "expand [his] horizon." (Id.). Odongo believed that Vassa was a top performer and that Walgreens wanted him to eventually take over Odongo's store so Odongo could "move up with the company." (Odongo Dep. at 160–61).

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[3] Vassa self-identifies as Indian American or Asian American. (Vassa Dep. at 26).

3

of law." Fed. R. Civ. P. 56(a). The Court must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "Thus, in response to a summary-judgment motion, a plaintiff cannot rely on factual allegations set forth in the complaint, 'but must set forth by affidavit or other evidence specific facts . . . .'" Smith v. Mobile Shipbuilding & Repair, Inc., 663 F. App'x 793, 798 (11th Cir. 2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

Throughout Odongo's Response, he repeatedly and inappropriately cites to the pleadings and mischaracterizes the record. Despite these attempts at illusion, he has failed to establish that there is a genuine issue of material fact that requires denial of summary judgment.

## III. Discussion

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Blow v. Va. College, 619 F. App'x 859, 861 (11th Cir. 2015) (quoting Ferrill v. Parker Grp., Inc., 168 F.3d 468, 472 (11th Cir. 1999)). Discrimination claims brought under § 1981 "are subject

4

to the same standards of proof and employ the same analytical framework" as those brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Id. (quoting Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009)). Therefore, where, as here, Plaintiff does not present any direct evidence of discrimination, the claims are analyzed under the McDonnell Douglas framework.[4] Holifield v. Reno, 115 F.3d 1555, 1561–62 (11th Cir. 1997); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff has the initial burden to establish a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562. If the plaintiff establishes a *prima facie* case by a preponderance of the evidence, a presumption of discrimination arises. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253–54 (1981).

Once the plaintiff has presented a *prima facie* case and its attendant presumption arises, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas, 411 U.S. at 802. If the employer meets this burden, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact

---

[4] Plaintiff appears to be bringing single-motive claims, as opposed to mixed-motive claims, and neither party argues that the mixed-motive analysis in Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227 (11th Cir. 2016), applies.

5

regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Id. at 1024–25.

A.  Prima Facie Case

To establish a *prima facie* case, Odongo "must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." Maynard v. Bd. of Regents of Div. of Univ. of Fla., 342 F.3d 1281, 1289 (11th Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802). The parties' dispute revolves around the fourth element. Odongo claims both that he was replaced by and treated less favorably than individuals outside of his protected class.

Odongo asserts that Vassa was a similarly-situated employee outside of his protected class who engaged in the same conduct but was treated more favorably. "To make a comparison of the plaintiff's treatment to that of [ ] employees [outside of his protected class], the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d at 1562. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id.

Odongo has not presented evidence that Vassa engaged in the same or similar conduct and was treated more favorably. In fact, Odongo specifically stated in his deposition that he has no personal knowledge or other documentation of Vassa ever processing an immunization or accessing a patient's or employee's electronic profile before

obtaining some form of consent. (Odongo Dep. at 183). While Walgreens seems to condone analyzing a patient's profile in proper circumstances to determine the patient's eligibility for a vaccine, no evidence has been presented that anyone other than Odongo electronically processed a patient's or employee's immunization order prior to obtaining consent. It is this act that was the stated basis for Odongo's termination. Therefore, Odongo has not established that Vassa was similarly situated in all respects.

Odongo also asserts that he was replaced by Vassa, someone outside of his protected class. Because neither party sufficiently addressed the significance of Walgreens first replacing Odongo with McGirt—an individual within Odongo's protected class—the Court will presume for summary judgment purposes that Odongo has established a *prima facie* case.

B. Pretext

Even assuming Odongo can make out a *prima facie* case, however, he has failed to present any evidence that Walgreens's proffered reason for terminating him was pretext for discrimination. As noted, Walgreens's legitimate business reason for terminating Odongo was his violation of Walgreens's privacy policy and HIPAA. Because Walgreen's reason for terminating Odongo is "objectively reasonable on its face—and specific enough for [Odongo] to rebut—the burden shifts back to [Odongo] to come forward with sufficient evidence to permit a reasonable factfinder to find that [Walgreens's] reason for [terminating him] . . . was pretextual." Kidd v. Mando American Corp., 731 F.3d 1196, 1205 (11th Cir. 2013). "In order to show pretext, [Odongo] must 'demonstrate that the proffered reason was not the true reason for the employment decision.'" Jackson v. Ala. State Tenure Comm'n., 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Burdine, 450 U.S. at 256).

7

Odongo may do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. In either case, "the employee must confront the employer's seemingly legitimate reason . . . 'head on and rebut it.'" Kidd, 731 F.3d at 1206 (quoting Chapman, 229 F.3d at 1030). He "cannot succeed by simply quarreling with the wisdom of that reason." Id.

Odongo has not rebutted Walgreens's legitimate reason for terminating him; he is simply quarrelling with their reason. As discussed previously, Odongo does not deny that he engaged in the problematic conduct and has not presented evidence that anyone else was engaging in such conduct. Thus, Odongo has not met his burden to show that Walgreens's stated reason for his termination was pretextual.

### C.     Other Circumstantial Evidence

"[E]stablishing the elements of the McDonnell Douglas framework is not . . . the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). If, despite failing to precisely establish the McDonnell Douglas elements, the plaintiff "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent" (Id. (citing Holifield, 115 F.3d at 1562)) —i.e., "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker" (Id. (quoting Silverman v. Bd. of Educ., 637 F.3d 729, 734 (7th Cir. 2011)))—the plaintiff can still survive summary judgment.

Here, Odongo stated in his deposition that Vassa's status as a top performer for Walgreens was the reason Vassa had received training for Odongo's position and the

8

reason Vassa was chosen to replace him after his termination. Odongo further stated that he never heard any comments that he considered discriminatory from his supervisors. (Odongo Dep. at 198–99). Odongo has failed to present other circumstantial evidence that creates a triable issue regarding Walgreens's discriminatory intent. Again, Odongo has failed to establish a case of discrimination or the existence of a genuine issue of material fact that would require denial of summary judgment.

## IV. Conclusion

It is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**. The Clerk is directed to enter judgment in favor of Walgreens and against Odongo, providing that Odongo shall take nothing on his claims. Thereafter, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida, on September 5, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

9